**SIGNED THIS 10th day of November, 2026**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

**In re:**
**GEORGE MARSHALL GOLDSMITH, SR.,**
**BRANDY NICOLE GOLDSMITH,**
**Debtors.**

**Chapter 13**
**Case No. 26-60279**

**GEORGE MARSHALL GOLDSMITH, SR.,**
**BRANDY NICOLE GOLDSMITH,**
**Plaintiffs,**

**v.**

**Adv. P. No. 26-06012**

**CONSUMER PORTFOLIO SERVICES, INC.,**
**Defendant.**

**ORDER AND DECISION**

George Goldsmith, Sr., and Brandy Goldsmith, chapter 13 debtors, appearing by counsel, commenced this adversary proceeding to declare void a judgment lien held by Consumer Portfolio Services, Inc. ("CPS") against real property owned by Mrs. Goldsmith. The debtors rely solely on Bankruptcy Code section 506(d) as the basis for relief. The debtors' position is that CPS filed its

proof of claim as unsecured to which no one objected, and therefore the claim is not an "allowed secured claim" within the meaning of section 506(d).

For the reasons stated below, the Court holds that section 506(d) does not permit the avoidance of an otherwise valid judgment lien simply because the lienholder filed a proof of claim that did not classify the claim as secured. CPS's default does not change that result because a default admits facts, not legal conclusions. The debtors' motion for default judgment is denied, and the complaint is dismissed without prejudice.

***Background***

On March 11, 2021, CPS was awarded a judgment against Mrs. Goldsmith. That judgment was docketed in the Circuit Court of Albemarle County. The debtors filed this chapter 13 case on March 9, 2026.[1] *See* Case No. 26-60279, ECF Doc. No. 1.[2] CPS filed a proof of claim as unsecured for $3,450.47. *See id.*, Proof of Claim No. 7-1. The order confirming the debtors' plan provides for payment in full of the allowed general unsecured claims, including CPS's claim. *See id.*, ECF Doc. No. 24. The plan does not provide for interest on CPS's claim or for release of the lien when the plan is completed.

The debtors filed this adversary proceeding on June 4, 2026. *See* ECF Doc. No. 1. Following the issuance of the summons, service of the complaint and summons on CPS, and CPS's failure to answer or respond to the complaint, the Clerk issued the entry of default as to the defendant on the debtors' request. *See* ECF Doc. Nos. 2–7. The debtors moved for entry of default judgment. *See* ECF Doc. No. 9. At the hearing on default judgment, the Court took the matter

---

[1] The debtors filed a prior chapter 13 case in this Court on February 17, 2022 (Case No. 22-60145). Their prior case was dismissed without a discharge.

[2] Unless a case number is given, citations to "ECF Doc. No." refer to the docket in this adversary proceeding, Adv. P. No. 26-06012.

under advisement and gave the debtors an opportunity to file a supplemental brief in support of their request. The debtors filed a memorandum in support of entry of an order avoiding CPS's judicial lien. *See* ECF Doc. No. 14.

***Default Judgment Standard***

Federal Rule of Bankruptcy Procedure 7055 makes Rule 55 of the Federal Rules of Civil Procedure applicable in adversary proceedings. A defendant's failure to answer or otherwise respond to a complaint does not entitle the plaintiff to the relief requested. *See, e.g.*, *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885))). Indeed, "[b]efore granting a Motion for Default Judgment . . . 'the Court must ensure that the complaint properly states a claim.'" *Meadows v. Mann Bracken LLP (In re Meadows)*, 425 B.R. 806, 809 (Bankr. W.D. Va. 2010) (quoting *Cumberlander v. KCL Site Servs. LLC*, Civ. A. No. 08-994, 2009 WL 4927144, at *8 (E.D. Va. Dec. 17, 2009)).

While CPS's default establishes the well-pleaded facts, it does not establish that section 506(d) voids CPS's lien. That is a question of law the Court must address regardless of whether CPS appears.

***Section 506(d) and* Dewsnup**

Section 506(d) provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d). The phrase "allowed secured claim" can be read two ways. On the first reading, it borrows the meaning of "secured claim" in section 506(a), under which a claim is secured only to the extent of the value of the creditor's interest in the collateral. A lien would then be void to the extent the claim is not allowed as secured under section 506(a). On the second reading, "allowed" and "secured" are separate requirements. A lien is void only if the claim it secures has not been allowed or if the claim is not secured by a lien on the property.

The Supreme Court adopted the second reading in *Dewsnup v. Timm*, 502 U.S. 410 (1992). In that case, the respondents argued that "the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." *Id.* at 415. Because the claim there had been "allowed" under section 502 and was "secured by a lien with recourse to the underlying collateral," it did "not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured." *Id.* (emphasis in original). The Supreme Court accepted that reading as "the better of the several approaches." *Id.* at 417. It held that section 506(d) "does not allow petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502." *Id.* It explained that this reading is consistent with "the pre-Code rule that liens pass through bankruptcy unaffected," a rule it was not convinced Congress intended to abandon. *Id.* Discharge ends only the debtor's personal liability. The creditor's right to proceed against the property remains. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

***Classifying a Claim as Unsecured Does Not Make It "Not an Allowed Secured Claim" or Invalidate the Lien***

Under *Dewsnup*'s reading, CPS's claim is outside section 506(d). CPS filed a proof of claim, no one objected, and the claim is deemed allowed under section 502(a). The claim is also secured, in the sense *Dewsnup* used the word, because it is backed by a judgment lien with recourse

to Mrs. Goldsmith's real property. The debtors do not challenge the validity of the judgment or the lien. They allege that the claim is secured by a judicial lien, and they ask the Court to void it only because CPS answered "No" to the question on its proof of claim that asks, "Is all or part of the claim secured?" That answer describes how CPS chose to assert its claim against the estate. It does not change whether the lien exists. A proof of claim is the creditor's statement of its right to payment from the estate. Under section 502(a) and Rule 3001(f), a properly filed proof of claim is deemed allowed and is prima facie evidence of the claim's validity and amount. The form does not create the creditor's lien, and checking a different box does not destroy it.

The Fourth Circuit has drawn the same distinction between the claim and the lien. In *Hamlett v. AmSouth Bank (In re Hamlett)*, 322 F.3d 342 (4th Cir. 2003), the creditor's claim was disallowed as untimely, and the debtor argued that section 506(d) voided the lien. The court disagreed. It explained that section 506(d)(2) "clarifies that Congress did not intend for a perfectly valid lien to be extinguished any time a creditor's claim on the bankrupt estate is disallowed." *Id.* at 349. It also explained that section 506(d) "only empowers the bankruptcy court to void liens supporting disallowed claims if it judges those liens to be invalid in substance." *Id.* at 348.

The structure of section 506(d)(2) supports this conclusion. A lienholder that files no claim at all keeps its lien. *See* 11 U.S.C. § 506(d)(2). Under the debtors' reading, a lienholder that files an unsecured claim loses its lien entirely. The creditor that participates in the case would then be worse off than the one that stays away because it filed a form one way rather than another. The Court does not read section 506(d) to produce that result.

**White v. FIA Card Services**

Although it does not cite the case directly, the debtors' complaint rests on *White v. FIA Card Services, N.A.*, 494 B.R. 227 (W.D. Va. 2012). The facts there closely match the facts here.

A chapter 13 debtor sought to avoid a recorded judgment lien under section 506(d) on the ground that the creditor had filed an unsecured proof of claim. The confirmed plan would pay the claim in full without interest. The creditor did not respond to the complaint. This Court denied relief on the ground that the section 506(d)(2) exception applied. The district court reversed, holding that the exception applies only when a creditor has failed to file a proof of claim of any type, and that "§ 506(d) requires their lien be avoided." *Id.* at 229–30. The court reasoned that a creditor that participates in the case and takes payment under the plan "cannot have it both ways." *Id.* at 231.

The Court gives *White* careful and respectful consideration. It does not, however, find *White* controlling on the question presented here for three reasons.

First, *White* did not decide the question being presented to the Court in this case. The parties and the courts in *White* assumed that a claim filed as unsecured is "not an allowed secured claim." The only disputed question was whether "such claim" in section 506(d)(2) refers only to secured claims or to proofs of claim generally. *White*, 494 B.R. at 229. On that question, the district court corrected this Court's reading, but neither court considered whether, under *Dewsnup*'s reading, a claim that is allowed and still backed by a lien on property is "not an allowed secured claim" at all. *White* cites *Dewsnup* only for the pre-Code rule that liens pass through bankruptcy unaffected. *Id.* at 230. It cites *Hamlett* only for the history of that rule. It does not address *Hamlett*'s statement that section 506(d) reaches only liens that are invalid in substance. If a claim is allowed and secured under *Dewsnup*, section 506(d) never applies, and the exceptions in (d)(1) and (d)(2) never come into play.

Second, *White* was decided without adversarial briefing. The appeal was unopposed, so the threshold question was never put to the district court.

Third, the Fourth Circuit precedent *White* relies on does not support the debtors' reasoning. *White* quotes *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995), which described section 506(d) as voiding a lien that secures a claim that is not an allowed secured claim, "unless the claim is not treated as an allowed secured claim simply because the creditor has elected not to file a proof of claim." *Id.* The court did not decide whether a claim filed as unsecured is an allowed secured claim, and that question was not before it. *Cen-Pen* itself held that a lien survived confirmation of a plan that purported to treat the creditor's claim as unsecured. *See id.* at 94.

***Debtors' Remaining Arguments***

The debtors argue that *Dewsnup* does not control because this is a chapter 13 case, not a chapter 7 case; because the lien is a judgment lien, not a consensual mortgage; and because CPS filed its claim as unsecured and the plan will pay it in full. They note that the Supreme Court limited its decision to the case before it. However, these distinctions do not reach the statutory question. Section 506 applies in chapter 13 just as it does in chapter 7. *See* 11 U.S.C. § 103(a). Nothing in section 506(d) suggests that "allowed secured claim" means one thing in chapter 7 and another in chapter 13. A chapter 13 debtor does have powers over liens that a chapter 7 debtor does not, but those powers come from chapter 13, not from section 506(d). The Fourth Circuit has said so directly: "the ability of a Chapter 13 debtor to strip off an underwater lien stems from § 1322(b) not § 506(d)." *Burkhart v. Grigsby*, 886 F.3d 434, 440 (4th Cir. 2018).

The type of lien does not matter either. *Dewsnup*'s reading of section 506(d) does not depend on whether a lien is consensual or judicial. When Congress wanted to treat judicial liens differently, it said so. *See* 11 U.S.C. § 522(f)(1)(A). And CPS's choice to file an unsecured claim and the plan's provision for payment bear on what the plan can do. They do not change what section 506(d) does.

The debtors also argue that CPS waived its lien by filing an unsecured claim. They rely on *In re Taylor*, 280 B.R. 711 (Bankr. S.D. Ala. 2001), and on older decisions holding that "the consequence of filing a secured claim as an unsecured debt is the waiver of the security." *Gardner v. Chi. Title & Tr. Co. (In re O'Gara Coal Co.)*, 12 F.2d 426, 429 (7th Cir. 1926). Relying on *O'Gara Coal*, the debtors argue that CPS's claim is not secured because CPS gave up its lien. But *O'Gara Coal* applied section 57 of the Bankruptcy Act, which required a secured creditor either to prove its full claim as unsecured or to have the claim reduced by the value of its security and share in the estate only for the balance. 12 F.2d at 428–29. The court treated those as "wholly inconsistent" remedies, so a creditor that chose one abandoned the other. *Id.* at 429. The creditor there filed its claim as unsecured knowing that its pledged stock was worthless, then tried to amend years later once the stock had become valuable. *Id.* at 428–29. The court would not let it "speculate for years as to the outcome of securities." *Id.* at 429. Under the Code, by contrast, allowance of a claim and survival of the lien that secures it are separate questions. A lienholder may stay out of the case entirely and keep its lien; section 506(d) voids a lien only when the claim it secures is not both allowed and secured. *Dewsnup*, 502 U.S. at 415–17. *O'Gara Coal* says nothing about what "allowed secured claim" means in section 506(d). *See In re Bowman*, 630 F. Supp. 3d 1216, 1223 (N.D. Cal. 2022) (declining to follow *O'Gara Coal* because it "was decided under section 57 of the Bankruptcy Act, a section that is no longer effective").

Similarly, *Taylor* did not address section 506(d). It appears to have rested on a broader reading of *O'Gara Coal* than that case supports and on facts specific to that case. *See Bowman*, 630 F. Supp. 3d at 1223–24 (finding *Taylor* "plainly distinguishable" and noting that it "does not account for section 506(a)"). The debtors' reliance on *In re Krahn*, 124 B.R. 78 (Bankr. D. Minn. 1990), is also misplaced. There, the IRS first filed a secured claim and later stated that it would

amend the claim to assert only an unsecured claim. The court found that conduct inconsistent with IRS's lien rights, and the IRS conceded that its lien had no collateral value. *Id.* at 80–82; *see Bowman*, 630 F. Supp. 3d at 1224 n.11.

The debtors are conflating two different issues: a creditor's choice about how to participate in the case and the voluntary release of its collateral. Choosing how to participate in the case does not, by itself, release a valid lien. Waiver is "the voluntary and intentional abandonment of a known legal right," and it "will be implied only upon clear and unmistakable proof of the intention to waive." *Chawla v. BurgerBusters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998); *see also In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996). Nothing in this record shows that CPS intended to give up its judgment lien. An answer of "No" to question 9 of Official Form 410, without more, does not show an intent to release a lien. The form does not ask whether the creditor is giving up its lien, and nothing in CPS's proof of claim says that it is. *See Bowman*, 630 F. Supp. 3d at 1224 ("[F]iling an unsecured claim, even where a creditor meant to file a secured claim, does not result in a waiver of the lien in Chapter 13 proceedings").

That does not mean CPS's choice has no consequences. A creditor can be bound by its choice. CPS's claim is allowed in the amount and form CPS asserted. The provisions of a confirmed plan bind "each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). *Cf. Varat*, 81 F.3d at 1317 (in chapter 11, a confirmed plan "acts like a contract that is binding on all of the parties," and a creditor's failure to object before confirmation "may operate as a waiver").

A plan that tells CPS plainly how its claim will be treated can provide that CPS will be paid in full without interest and that the judgment lien will be released when those payments are

complete. If CPS receives notice of that treatment and does not object, it may be deemed to have accepted the plan. *See* 11 U.S.C. § 1325(a)(5)(A). It will then be bound by the confirmed plan. *See id.* § 1327(a). That is the mechanism that accomplishes what the debtors are asking section 506(d) to do. It is also consistent with the result in *Taylor*, where the court tied the release of the lien to the debtors' completion of their plan payments. *Taylor*, 280 B.R. at 716.

***The Path Forward***

The debtors' memorandum says the plan will pay CPS's claim in full without interest. The plan, however, is silent about the judgment and about the lien. A plan that says nothing about a lien does not affect it, and the lien passes through the case unaffected. *See Dewsnup*, 502 U.S. at 417–18; *Cen-Pen*, 58 F.3d at 94. On the other hand, had the plan expressly provided that CPS's claim would be paid in full without interest and that CPS would release the judgment lien when the trustee completed disbursements on the claim, and had that plan language been served on CPS so that CPS had a fair opportunity to object, CPS would have been bound by that plan upon confirmation. *See* 11 U.S.C. §§ 1325(a)(5)(A), 1327(a). The debtors may seek to modify their confirmed plan under section 1329 to provide that treatment. The debtors may then move under Rule 5009(d) "for an order declaring that the secured claim has been satisfied and the lien has been released under the terms of the confirmed plan." Fed. R. Bankr. P. 5009(d). The motion must be served on the claim holder "in the manner provided by Rule 7004 for serving a summons and complaint." *Id.* An order under Rule 5009(d) can be recorded to clear title to the property, which is precisely what the debtors are requesting.

***Conclusion***

Section 506(d) does not permit the Court to void an otherwise valid judgment lien simply because the lienholder filed a proof of claim that did not classify its claim as secured. CPS's default

does not change that conclusion. The well-pleaded facts, taken as true, do not support the relief the complaint seeks.

Accordingly, it is

**O R D E R E D**

that the debtors' motion for default judgment, ECF Doc. No. 9, is **DENIED**; and it is further

**O R D E R E D**

that the complaint is **DISMISSED WITHOUT PREJUDICE** to the debtors' right to seek a modification of their confirmed plan under 11 U.S.C. § 1329 that provides for the treatment of CPS's judgment lien, to seek an order under Fed. R. Bankr. P. 5009(d), or to seek other relief available under the Bankruptcy Code.

Copies of this order are directed to be sent to the debtors; counsel for the debtors; the chapter 13 trustee; and the Office of the United States Trustee.